CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EVAN MATEER (CABN 326848)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Evan.mateer@usdoj.gov

Attorney for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-CR-103-JSW |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| AIDEN WORLEY, | |
| Defendant. | |

## I.    INTRODUCTION

Defendant Aiden Worley comes before the Court having plead guilty to one count of receipt of child sexual abuse material in violation of 18 U.S.C. §§ 2252(a)(2) and (b) arising out of a disturbing course of conduct in which the defendant coerced two minor victims into performing sexual acts on video calls for his own gratification.  To account for this egregious conduct, the government asks the Court to sentence Worley to 120 months in prison followed by a 10-year term of supervised release.

## II.    OFFENSE CONDUCT AND BACKGROUND

### A.    Offense Conduct

In June 2020, Aiden Worley sexually abused two minor victims: 15-year old Minor Victim 1 (MV1) (15 years old) and 13-year old Minor Victim 2 (MV2).  In both cases, Worley lied to the victims about his age, solicited sexually explicit images, and then used the sexually explicit images to extort his victims into performing sex acts on a live video chat for his own gratification.

#### 1.    In June 2020, Worley solicited MV1 to send him sexually explicit pictures, which he used to extort her into engaging in sex acts on a live video chat

Worley first met MV1 on a social media application called Spotafriend.  PSR¶10.  The two moved their conversation to the platform Snapchat.  During these conversations, Worley told MV1 that he was 18 years old, but he was in fact 20 years old.  PSR¶12.  The conversation became sexually charged, and Worley demanded that MV1 send him nude images, which she did.  PSR¶11.  Worley then demanded that MV1 engage in sex acts on a live video call, and told her that if she did not comply, he would publicly post her sexually explicit photographs on Instagram.  *Id.*  MV1 was adamant that she did not want to participate in video calls and told Worley that he was making her feel "suicidal" and like she wanted to "self-harm."  *Id.*  When MV1 refused to engage in a video call with him, Worley posted a photograph of MV1's buttocks on Snapchat and sent her a screen shot of the post.  *Id.*  MV1 eventually complied and engaged in sexually explicit acts for Worley on camera for him.  *Id.*  Worley recorded this live video call in which MV1 performed sexually explicit acts, and threatened to expose her if she did not send additional sexually explicit images.  *Id.*

MV1 pleaded with Worley to delete the video of her engaging in sex acts that he had taken, but he refused to do it unless she agreed to additional video calls.  *Id.*  She said that she was "scared" of other

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                                1

people seeing the video that Worley had taken and was worried about her future. *Id.* Worley was unmoved and continued to use the video to extort MV1 to engage in sex acts. *Id.* Worley initially suggested that MV1 would need to perform for him in 15 video calls for him to delete the recording, but eventually agreed that that "was a lot" and that MV1 only had to do "1 or 2" video calls. *Id.* At one point, Worley even threatened to "call the cops" on MV1, suggesting to her that she would get in trouble for producing and distributing child pornography when she sent him her nude photographs. *Id.*

In all, Worley's enticement and extortion succeeded in inducing MV1 to join three sexually explicit video calls. PSR¶12. In one video call, Worley demanded MV1 to be nude and to insert a hairbrush handle into MV1's vagina. PSR¶11. MV1 said that the hairbrush made her bleed and that she was crying while performing for Worley. *Id.* During these calls, MV1 could hear Worley masturbating. Worley also enticed and received numerous sexually explicit photos from MV1. *Id.*

**2.      In June 2020, Worley solicited MV2 to send him sexually explicit pictures, which he used to extort her into engaging in sex acts on a live video chat**

In June 2020, Worley followed a similar pattern of deceit, enticement, coercion, extortion to force MV2, to engage in sex acts on video. Worley met MV2 on an application called "Justfriends," but moved the conversation to snapchat. PSR¶23. At the time of this incident, MV2 was 13 years old. Worley was 20, but he lied to MV2 and told him that he was 16 years old. *Id.*

MV2 provided Worley with videos of her engaged in sex acts. PSR ¶24. But this did not satisfy Worley. *Id.* He demanded that she also perform sex acts for him on a live video call. *Id.* He said he wanted to "watch [her] play with [herself]". *Id.* But MV2 refused; she said "I hate video chats just send videos." *Id.* MV2 suggested that she just send more video or photo messages instead. *Id.* But Worley insisted that MV2 needed to conduct a live video chat, saying he "want[s] u to watch me. I want to see your tongue  and your reaction when I do it." *Id.* MV2 again refused and said it was "final." *Id.* But Worley said that he had "one thing that will change ur mind." *Id.* Worley told MV2 that he had recorded and saved the sexual videos and images that she had already sent him. *Id.* Worley threated to "sell that shit in a heartbeat" if MV2 did not comply. *Id.* Worley added that MV2 was "such a hot girl" and that "so many boys would pay to see." *Id.* Facing extortion, MV2 relented, asking that she not be required to do anything "extreme" or loud. *Id.* MV2 joined the video chat with Worley and performed sexual acts

for him.  *Id.*  After the call, MV2 said "please delete them"—referring to the sexual videos and images—adding, "I'll say anything u want me to."  *Id.*

### 3. On August 19, 2022, Worley was found to be in possession of child sexual exploitation material

On August 19, 2022, law enforcement executed a search warrant for Worley and his residence. PSR¶30.  Worley was located and arrested.  *Id.*  Law enforcement seized an Apple iPhone 13 from his bedroom.  *Id.*

Worley was interviewed and stated that he did not recall the incident MV1 had reported.  PSR ¶32.  Worley advised law enforcement that he used social media and dating applications to chat message with a lot of different people.  *Id.*  Worley claimed that he does not chat with minors.  PSR¶33.  Worley also stated that he frequently sends chat messages about sexual acts and stated he had kinks that include family sexual fantasy role play, sex with married couples (swingers), and BDSM (bondage, discipline, sadism, and masochism).  *Id.*  Worley stated he knew the difference between adult pornography and child pornography and that child pornography was illegal.  *Id.*  Worley advised law enforcement that he watched child pornography one time in high school and it made him sick, and he had to see a therapist.  *Id.*  Worley told law enforcement that there would not be any evidence on his cell phone.  *Id.*

After the interview, Worley was arrested and booked into jail.  PSR¶24.  During booking, law enforcement discovered a Google Pixel cell phone concealed in the shoe Worley was wearing.  *Id.*  A search of the Google Pixel phone belonging to Worley revealed one image of MV1 on her hands and knees facing away from the camera, exposing her bare buttocks; three images of MV1's bare buttocks; and three images of MV1's bare breasts.  PSR¶35.  Worley's Google Pixel phone also contained five nude images of children, seven nude images of children engaged in sexual acts, and one video that depicted a minor female (aged approximately 13 to 15) engaging in a sexual act with a male (aged approximately 7 to 9).  *Id.*  A search of the Apple iPhone 13 belonging to Worley revealed 19 photos of nude children and seven photos of nude children engaged in sexual acts.  PSR¶36.  The children ranged from approximately five years old to approximately 14 years old.  *Id.*  There were three collages of photos of nude children included. Below is an example of a photo depicting child pornography. In total, Worley possessed at least 31 nude images of children, 14 nude images of children engaged in sexual

acts, and one video of child pornography.   PSR¶37.

**B.    Procedural Background**

On July 7, 2023, Worley was charged by complain with violating 18 U.S.C. § 2422(b) (Coercion and Enticement of a Minor).  On April 17, 2025, Worley waived indictment and was charged by Information with one count of violating 1 18 U.S.C. §§ 2252(a)(2) and (b) – Receipt of Child Pornography.  On July 8, 2025, Worley plead guilty to Count One of the Information pursuant to a plea agreement with the government.  The plea agreement was pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  In the agreement, the parties agreed that a reasonable resolution of this matter would be a sentence of imprisonment with a range of 5 to 10 years.

**III.    THE SENTENCING GUIDELINES CALCULATION**

The PSR calculates the offense level as follows (PSR ¶¶ 47-60):

| | | |
|---|---|---|
| a.  Base Offense Level,  USSG §§2G2.1(a) and 2G2.2(c)(1). | | 32 |
| b.  Specific Offense Characteristic: | | |
| | a.  USSG §2G2.1(b)(1)(B) (victim between 12 and 16 years old) | +2 |
| | b.  USSG §2G1.3(b)(3)(B) (use of a computer) | +2 |
| | c.  USSG §2G1.3(b)(4)(A)(i) (involved a sex act) | +2 |
| a.  Acceptance of Responsibility | | -3 |
| b.  Total Offense Level | | 35 |

The PSR calculates Worley as being in Criminal History Category I.  PSR ¶64.  The applicable sentencing guidelines range for Total Offense Level 35 and CHC I is 324-405 months.  The minimum term of imprisonment on Count One is 168 to 210 months in prison.

The government agrees with the PSR's calculations of Worley's Criminal History Category. However, the parties' plea agreement calculates Worley's Offense Level as follows:

| | | |
|---|---|---|
| a.  Base Offense Level, U.S.S.G. §2G2.2(a)(1) | | 18 |
| b.  Specific offense Characteristics: | | |
| | a.  2G2.2(b)(5) (pattern of abuse of a minor) | +5 |
| | b.  2G2.2(b)(6) (use of a computer) | +2 |
| | c.  2G2.2(b)(7) (at least 10 images) | +2 |

    c.        Acceptance of Responsibility:                       - 3

    d.        Adjustments under U.S.S.G. Ch. 4 (*e.g.*, zero-point offender)       -2

    e.        Total Offense Level:                         22

The parties' proposed guidelines calculation results in a sentencing range of 41-51 months. The government asks the Court to adopt the parties' guidelines calculation.

***Base Offense Level***

The PSR applies a base offense level of 32 pursuant to USSG §2G2.1, because of the application of the cross-reference provision in §2G2.2(c)(1). Under that provision, the higher base offense level applies "if the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct." *See* USSG §2G2.2(c)(1). The application notes instruct that the cross-reference is to be applied "broadly." USSG § 2G2.2, cmt. n. 9.

The Ninth Circuit has analyzed this section and explained that it applies even if the defendant "had an additional reason other than the creation of the videotape and photographs for causing" the minor to engage in sexual conduct, or when the creation of the visual depiction was not the "primary purpose." *United States v. Hughes*, 282 F.3d 1228, 1231 (9th Cir. 2002). It is also not necessary for the defendant to intend to distribute the visual depiction. *Id.* The question is simply "whether *one* of the defendant's purposes was to create a visual depiction." *Id.* However, the cross-reference does not apply merely because the defendant made a visual depiction of sexual conduct; the court must determine that they enticed the sexual conduct for the purpose of making the visual depiction. *See id.* (citing *United States v. Crandon*, 173 F.3d 122 (3d Cir.1999)).

To the extent that there is any ambiguity in the application of the §2G2.2(c)(1) cross-reference, the government asks that it be resolved in favor of applying the §2G2.2 guidelines section. The government, considering the totality of the circumstances, charged Worley the receipt statute. The government accordingly applied that guidelines section consistent with receipt and possession.[1] The government

---

[1] As reflected below, the fact that the receipt was part of a course of conduct that involved coercion and

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                    5

therefore requests that the Court apply the§ 2G2.2 guidelines section as outlined in the plea agreement, and that the aggravated nature of the conduct be accounted for as 3553 factors.

*Specific Offense Characteristics – Distribution[2]*

The PSR applies a 2-level increase pursuant to §2G2.2(1)(b)(3) for the distribution of CSAM, explaining that it is based on Worley's posting of a nude photo of MV1 to a snapchat account.  The plea agreement does not include an enchantment for distribution under §2G2.2(b)(3).  The government notes that while there is evidence that Worley posted an image of MV1 on his snapchat, there is no evidence that this was viewed, or could have been viewed, by other individuals.  The government asks that a distribution enhancement not be applied.

*Multiple Count Adjustment*

The parties' plea agreement did not apply the multiple counts adjustment because that provision is applicable to conduct under §2G2.1, and not §2G2.2.  Because the government objects to the application of §2G2.1, the government objects to the application of the multiple count adjustments.

*Use of a Computer*

As described above, Worley used Snapchat and his phone to conduct this offense.  Both involve the use of a computer.  Therefore, a 2-level enhancement applies under either §2G1.3(b)(3)(B) or 2G2.2(b)(6).

*Pattern of Abuse of a Minor and Greater than 10 Images*

If the Court applies §2G2.2, the government asks that it applies a 5-level enhancement for a pattern of abuse of a minor pursuant to §2G2.2(a)(1).  This provision applies when there is "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant."  Here, Worley abused two minors.  This enhancement therefore applies.  Similarly, if the Court applies §2G2.2, it should apply a 2-level enhancement for possession of greater than 10 images, but less than 150 image, pursuant to 2G2.2(b)(7).  As described in the PSR, Worley was in possession of 45 images

---

enticement is a serious aggravating factor that can and should be considered in the Court's §3553 analysis.

[2] The government addresses only the distribution provision because there are nearly identical provisions in both Sections 2G2.1 and 2G2.2.  The PSR also applies enhancements for conduct involving a minor under 16 (§2G2.1(b)(1)(B)) and commission of a sex act (§2G2.1(b)(2)(A), but these do not have analogues in 2G2.2.  They should not be applied, because the Court should apply 2G2.2.

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                                6

constituting CSAM.  PSR¶37.

## IV.    SENTENCING RECOMMENDATION

### A.  Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991 (citation omitted).  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct; and
>
> (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### B.  A Sentence of 120 Months in Prison is Sufficient but Not Greater than Necessary

The government recommends a sentence of 120 months in prison.  This sentence is warranted by Worley's cruel and callous abuse of two young girls and by the need to deter others from using the anonymity of the internet to deceive, extort, and sexually abuse other vulnerable children.

#### 1.    Nature and seriousness of the offense

The most important factors in determining the sentence in this case are the nature and seriousness of Worley's offense, which was characterized by his willful abuse of his victims.  Even before Worley began extorting his victims, he was enticing minors to engage in sexual acts and to send him sexual images and videos.  And he did so by deceiving them about his age, pretending to be their friend, and claiming to have a "connection," hiding the predator that he really was.  Through his conversation, he knew that his victims were minors.  And so he knew that he was receiving and viewing child pornography, which he admitted to law enforcement knew was wrong.  PSR¶33.  This act of receiving MV1 and MV2's nude images and

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                                              7

videos, with nothing more, carries a 5-year mandatory minimum. 18 U.S.C. §§ 2252(a)(2) and (b).

But Worley's conduct did not stop there. When his avarice and coaxing was insufficient to convince MV1 and MV2 to engage in the live videos calls that he craved, he turned to extortion. The cruelty of this conduct is self-evident. The reason Worley threatened to release MV1 and MV2's images and videos was specifically because he *knew* it would scare them. The extortion could not work otherwise. And so, again, Worley escalated his abuse with full knowledge that what he was doing was harmful and wrong. But if that was not enough, his victim's made it extremely clear the damage he was doing. MV1 told him that he was traumatizing her so severely that she wanted to self-harm and felt suicidal. But even this knowledge did not cause Worley to stop. He continued to insist that MV1 perform for him on video. The seriousness of the offense is further heightened by the perverted and degrading acts that Worley forced MV1 to engage in, acts which caused her physical and emotional trauma. *See* PSR ¶38-44 (Victim Impact Statement describing the long-term trauma Worley's conduct caused MV1).

Though the heinous nature of Worley's conduct speaks for itself, there are other benchmarks that underscore how serious it is. First are the punishments that Congress has provided for various sexual abuse offenses in the U.S. code. Although Worley is convicted only of receipt of child pornography, the conduct to which he has admitted satisfies the elements for other, more serious offenses. He could have been convicted of coercion and enticement, which carries a 10-year mandatory minimum. 18 U.S. Code § 2422. He also could have been convicted of sexual exploitation of a minor, carrying a 15-year mandatory minimum sentence. 18 U.S. Code § 2251. The fact that the conduct Worley has stipulated to constitutes crimes carrying such severe mandatory minimum demonstrates its extreme seriousness.

The sentencing guidelines provide another quantitative metric to assess the seriousness of the offense. As discussed above, as part of the plea agreement, the government agreed to the application of the guidelines for receipt of child pornography, which results in a sentencing range of 41-51 months. But the Court can, and should, depart upward where the guidelines score does not adequately reflect the seriousness of the offense. *See* USSG §5K2.21. As described above, in this case Worley did far more than merely receipt child pornography. While the government urges that the Court adopt the guidelines outlined by the parties' plea agreement, as part of its 3553 analysis, it should also consider that they do not account for Worley's coercion and enticement, and that the resulting 41-51 month sentencing range is

insufficient.  By contrast, the sentencing guidelines proposed by probation more appropriately capture the full course of conduct, and the seriousness of the harm.  While the Court should not adopt these higher guidelines, it should consider them as reflective of the seriousness of the offense in its 3553 analyses.

The two qualitative benchmarks—the mandatory minimums that Congress has provided for conduct like Worley's and the sentencing range that captures the full seriousness of the conduct—suggest that a sentence of 180 months in prison would be appropriate for this sort of conduct.[3]  However, as described below, to account for mitigating factors, the government recommends only 120 months in prison.

### 2.    The need for deterrence

A second factor supports a sentence of 120 months in prison: the need to deter other from similarly heinous conduct.  The internet is a dangerous place because of predators like Worley.  They use the anonymity it provides to deceive and gain the trust of vulnerable minors. And then they exploit that trust to abuse them, as Worley did.  By their very nature, these interactions are often private and unsupervised, leaving responsible adults with few avenues to protect their children.  Although no sentence given in this case can stop every predator, a significant prison term will send a message that this type of conduct will be met with severe consequences.  It will also ensure that Worley never abuses a minor in this way again.

### 3.    Mitigating factors

The defense has proffered several mitigating factors in support of a sentence at the low end of the parties' joint sentencing recommendation.  These mitigating factors include trauma and abuse in Worley's childhood, mental health issues, and the isolation of the COVID-19 pandemic that worsened these issues.  Although the government's recommendation of 120 months is above the high end of the parties' guidelines range, these mitigating factors have nevertheless been adequately incorporated in the parties' agreed resolution. Worley was originally charged by complaint with a violation of 18 U.S.C § 2422, coercion and enticement of a minor, which carries a 10-year mandatory minimum.  In recognition of the mitigation the defense presented, the government declined to charge Worley with a count under 18 U.S.C. §2251, which carries a 15-year mandatory minimum.  Further, in recognition of these mitigating factors and to protect

---

[3] Notably, the JSIN data indicates that defendant's who engaged in similar conduct to Worley's received average sentences of 155 months.  PSR¶121.  A sentence of 120 months is below this average, which is accounted for by the mitigating factors.  A sentence of only 60 months, however, would represent a significant sentencing disparity.

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                                    9

the victims from further trauma at trial, the government agreed to a resolution where Worley was only required to plead to one count of receipt of child pornography. Finally, the government agreed to cap its recommendation at 120 months in a binding plea agreement. In each of these ways, the proposed resolution has adequately accounted for the mitigating factors, providing Worley the opportunity to argue for a sentence significantly below the mandatory sentence he might otherwise have faced.

Considering the significant steps already taken to account for these mitigating factors, it would not be appropriate to go further and impose a sentence as lenient as 5 years. Indeed, sentencing Worley to only 5 years would, in effect, treat him as if *all* he had done was receive child pornography, and so serve to erase the coercive, abusive extortion he engaged in. Such a sentence would not adequately account for the seriousness of the offense and therefore would not be sufficient under Section 3553.

### B.    Supervised Release

The government agrees with the length and terms of supervised release recommended by probation in the PSR. A 10-year term will protect the community from any potential recidivism by Worley. The special search condition is appropriate because Worley used computers to conduct the instant offense. And the proposed terms of supervised release limiting Worley's future access to computers and the internet are necessary to protect the public from recidivism.

### C.    Restitution

Restitution is mandatory in this case. 18 U.S.C. § 2259. Because the victim's losses have not been fully ascertained yet, the government requests a restitution hearing 90 days from the sentencing hearing. If the parties agree to the restitution amount, they will file a stipulation.

## V.    CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the defendant to 120 months' imprisonment, 10 years' supervised release, and a $100 special assessment.

DATED:  November 18, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Evan M. Mateer*
EVAN M. MATEER
Assistant United States Attorney

GOVERNMENT SENTENCING MEMO
4:25-CR-103-JSW                              10